Chad T. Nitta (*appearance pro hac vice*)
Jill E. Beathard (*appearance pro hac vice*)
KUTAK ROCK LLP
1801 California St., Suite 3000
Denver, CO 80202
Tel:  (303) 297-2400
chad.nitta@kutakrock.com
jill.beathard@kutakrock.com

*ATTORNEYS FOR PLAINTIFF*
*Spider Labs, Ltd.*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE RULE 45 SUBPOENA ISSUED TO GODADDY.COM, LLC DATED JULY 23, 2020 | Case No.: 2:20-mc-00039-SPL |
| SPIDER LABS, LTD.<br><br>Plaintiff,<br><br>v.<br><br>JOHN DOE,<br><br>Defendant. | **SPIDER LABS, LTD.'S RESPONSE IN OPPOSITION TO JOHN DOE'S MOTION TO QUASH SUBPOENA TO GODADDY.COM, LLC** |

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................ ii

I.      INTRODUCTION ........................................................................................... 1

II.      FACTUAL AND PROCEDURAL BACKGROUND .................................... 1

     A.      Spider Labs ........................................................................................ 1

     B.      The "Jeff Katzenberg" Emails .......................................................... 2

     C.      Doe's Admissions Confirm Numerous Inaccuracies ......................... 3

     D.      Doe Severely Mischaracterizes the Facts Related to MRC ................ 4

III.      ARGUMENT ................................................................................................. 4

     A.      Doe Fails To Show That He Is Entitled To First Amendment Protections ........... 4

     B.      Even If Doe's Communications Are Protected By The First Amendment, Spider Labs Is Not Required To Meet The Summary Judgment Standard ........... 5

     C.      Applying The Proper Standard, The Motion To Quash Should Be Denied .......... 7

         1.      Spider Labs Can Establish Each of the Elements For Defamation ........... 7

             a.      The elements for a claim of defamation are present ...................... 7

             b.      None of Doe's affirmative defenses save the Motion ................... 9

                 (1)      Doe's emails were not opinion statements for purposes of a defamation analysis .................................. 10

                 (2)      Additional discovery is necessary for the Court to ascertain the truth or falsity of Doe's statements ............. 11

                 (3)      Spider Labs is not a public figure, and evidence exists to support a finding of actual malice .................... 12

                 (4)      Doe's Statements are not matters of public concern, but there is evidence supporting gross irresponsibility ............................................................. 14

         2.      Sufficient Evidence Exists to Support Claims of Tortious Interference With Contractual Relationships and Prospective Business Advantage ........................................................................ 14

         3.      Spider Labs Has a Viable Claim for Injunctive Relief .......................... 15

         4.      The Balance of the Hardships Strongly Favor Spider Labs ..................... 16

     D.      Doe Should Not Be Awarded His Attorney Fees ............................... 17

IV.      CONCLUSION ............................................................................................ 17

i

SPIDER LABS, LTD.'S RESPONSE IN OPPOSITION TO JOHN DOE'S MOTION TO QUASH SUBPOENA TO GODADDY.COM, LLC
Case No. 2:20-MC-00039-SPL

4817-1225-3898.5

1
2
3

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*In re Anonymous Online Speakers*,
  661 F.3d ........................................................................................................... 5, 6, 7, 17

*Art of Living Foundation v. Does 1-10*,
  Case No.: 10-CV-05022-LHK (N.D. Cal. Nov. 9, 2011) ........................................9

*Best Western Int'l, Inc. v. Doe*,
  No. CV–06–1537–PHX–DGC, 2006 WL 2091695 (D. Ariz. July 25, 2006) ........................6

*Biro v. Conde Nast*,
  963 F.Supp.2d 255 (S.D.N.Y. 2013) ................................................................. 12, 13

*Blair v. Inside Ed. Prods.*,
  7 F.Supp.3d 348 (S.D.N.Y. 2014) ...........................................................................14

*Bloom v. Fox News of Los Angeles*,
  528 F.Supp.2d 69 (E.D.N.Y. 2007) .........................................................................14

*Doe v. 2TheMart.com Inc.*,
  140 F.Supp.2d 1088 (W.D. Wash. 2001) ..................................................................5

*Egiazaryan v. Zalmayev*,
  880 F.Supp.2d 494 (S.D.N.Y. 2012) ......................................................................11

*Enigma Software Grp. USA v. Bleeping Computer LLC*,
  194 F.Supp.3d 263 (S.D.N.Y. 2016) ................................................................ 12, 13

*General Mills, Inc. v. Chobani, LLC*,
  158 F.Supp.3d 106 (N.D.N.Y. 2016) ......................................................................16

*Gertz v. Robert Welch, Inc.*,
  418 U.S. 323 (1974) ...............................................................................................12

*Grayson v. Ressler & Ressler*,
  271 F.Supp.3d 501 (S.D.N.Y. 2017) ......................................................................10

*Gristede's Foods v. Poospatuck (Unkechauge) Nation*,
  No. 06–cv–1260, 2009 WL 4547792 (Dec. 1, 2009) ...............................................9

*Lerman v. Flynt Distrib. Co.*,
  745 F.2d 123 (2d Cir. 1984) ............................................................................ 12, 13

*O.E.M. Glass Network, Inc. v. Mygrant Glass Co.*,
  436 F.Supp.3d 576 (E.D.N.Y. 2020) ......................................................................15

*Puebla Palomo v. DeMaio*,
  403 F.Supp.3d 42 (N.D.N.Y. 2019) .......................................................................15

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ii

SPIDER LABS, LTD.'S RESPONSE IN OPPOSITION TO JOHN DOE'S MOTION TO QUASH SUBPOENA TO GODADDY.COM, LLC
Case No. 2:20-MC-00039-SPL

4817-1225-3898.5

*Salinger v. Colting*,
    607 F.3d 68 (2d Cir. 2010) ....................................................................................16

*Small Bus. Bodyguard Inc. v. House of Moxie, Inc.*,
    230 F.Supp.3d 290 (S.D.N.Y. 2017)......................................................................10

*Thai v. Cayre Group, Ltd.*,
    726 F.Supp.2d 323 (S.D.N.Y. 2010)....................................................................7, 9

*USA Technologies v. Doe*,
    713 F.Supp.2d 901 (N.D. Cal. 2010)........................................................................7

*Wichansky v. Zowine*,
    150 F.Supp.3d 1055 (D. Ariz. 2015) ......................................................................17

**STATUTES**

U.S. Const. amend. I ...........................................................................................*passim*

**RULES**

F.R.C.P. § 8 ...........................................................................................................9

C.P.L.R. § 3016 .....................................................................................................9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.     INTRODUCTION.

Contrary to John Doe's ("Doe") arguments in the Substitute Brief in Support of Motion to Quash Subpoena to GoDaddy.com, LLC (the "Motion"), Spider Labs's underlying Subpoena does not implicate the First Amendment for the simple reason that Doe has not engaged in protected speech.  Rather than publish his words on the Internet, Doe sent personal, unsolicited emails to thirteen of Spider Labs's customers and stated, among other things, that Spider Labs was "defrauding their clients" and that Spider Labs's "clients aren't actually protected from fraud." (*See* Exs. A–E to Declaration of Eurico José Teodoro Doirado ("Doirado").)  In a tacit concession that his emails are not protected by the First Amendment, Doe repeatedly argues he sent the emails in furtherance of a blog article he was writing—which was never published.

Doe's efforts to use the First Amendment to quash Spider Labs's subpoena are particularly inappropriate given that Doe admits that he chose to use a pseudonym for his "credibility and neutrality" and because he did not want his opinions to be "imputed to [his] employer."  (Doe Decl., ¶ 9.)  Thus, Doe admits that he and his employer are well-known in the advertising fraud ("Ad Fraud") industry, in which Spider Labs also operates.  Doe's statements are properly viewed as commercial speech subject to, at most, much more limited free speech protections.

Even if Doe's emails are protected speech, Doe mischaracterizes Ninth Circuit precedent as requiring Spider Labs to overcome the most stringent possible standard to survive the Motion. (Mot. 7:12-16.)  Applying the appropriate legal standard, it is undeniable Spider Labs has met its burden, as evidenced by the Southern District of New York's prior determination that Spider Labs has met its *prima facie* burden.  (Order Granting Mot. to Expedite Disc. 2, ECF No. 5 ("New York Order").)  Thus, under the appropriate standard, the Motion to Quash must be denied.

## II.     FACTUAL AND PROCEDURAL BACKGROUND.

### A.     Spider Labs.

Spider Labs is based in Tokyo, Japan, with a research development center in Lisbon, Portugal.  (Doirado Decl. ¶¶ 3-4, 6.)  Founded in 2011 by Satoko Ohtsuki, a recent college

graduate, Spider Labs has thirty-two employees.  (*Id.* ¶¶ 5-6.)  Despite its small size, Spider Labs is a leading provider of anti-Ad Fraud services with customers in Japan, Korea, and the United States.  (*Id.* ¶ 10.)  Spider Labs's primary service, SpiderAF, is an anti-Ad Fraud platform with functions including a reporting dashboard, a shared "blacklist" service, and a real-time Ad Fraud detection application program interface.  (*Id.* ¶ 12.)  The behavior of a customer's website will vary depending on the services the customer is receiving from Spider Labs and the customer's system implementation.  (*Id.*)  In November 2019, as the notoriety of SpiderAF grew, Spider Labs made the decision to change its name from Phybbit to Spider Labs.  (*Id.* ¶ 14.)

> **B.** **The "Jeff Katzenberg" Emails.**

On June 15, 2020, Spider Labs received a direct message on Facebook from its customer, MOLOCO, Inc., a leading mobile AdTech company, saying it had received an email from an individual named Jeff Katzenberg with the email address jeff.k@fightclickfraud.com.  (*Id.* ¶ 16; Ex. A to Doirado Decl.)  Prior to receiving the email, Spider Labs never dealt with an individual named "Jeff Katzenberg."  (Doirado Decl. ¶ 17.)  In light of the severity of the accusations in Katzenberg's email, including that Spider Labs's technology was not based on artificial intelligence, that Spider Labs was defrauding its clients, that Spider Labs's clients are not protected from Ad Fraud, and that Spider Labs's platform could not detect Ad Fraud, Spider Labs launched an investigation.  (*Id.* ¶ 18.)  Spider Labs reviewed its website and identified an Internet Protocol ("IP") address that had viewed information related to MOLOCO shortly before MOLOCO received the email from Katzenberg.  (*Id.* ¶ 19.)  Spider Labs also identified an IP address that accessed its website via the LinkedIn app on June 15, 2020.  (*Id.* ¶ 22.)

Spider Labs identified other customers viewed at the same time as MOLOCO, including ValueCommerce Co., Ltd. ("ValueCommerce") one of Japan's leading providers of e-commerce and Internet marketing solutions; United, Inc., a Japanese company that provides an advertising monetization platform known as "AdStir"; UNICORN, a fully automated marketing platform offered by Bulbit, Inc., a subsidiary of Adways, Inc. ("UNICORN"); and i-mobile Co., Ltd. ("i-mobile"), one of the largest advertising platform providers in Japan.  (*Id.* ¶ 21.)  Spider Labs

contacted those customers, and ValueCommerce, United, UNICORN, and i-mobile each confirmed they received an email on June 15, 2020 from Jeff Katzenberg and the email address jeff.k@fightclickfraud.com.  (*Id*. ¶ 23-24; *see* Exs. B–F to Doirado Decl.)  In the Subpoena Doe seeks to quash, Spider Labs seeks the individual who registered www.fightclickfraud.com.

  **C.**  **Doe's Admissions Confirm Numerous Inaccuracies.**

  In his Declaration, Doe muddles the timeline of events.  In particular, Doe claims to have first learned about Spider Labs through a June 10, 2020 press release (Doe Decl. ¶¶ 12, 15), completed a subsequent investigation (*Id*. ¶¶ 16-17), identified Spider Labs's clients by visiting its website for the purpose of testing Spider Labs's claims regarding its technology (*Id*. ¶¶ 22-26), conducted at least "twelve hours" of testing and research (*Id*. ¶¶ 27-30), and then contacted the customers *after* completing his testing (*Id*. ¶¶ 31-32.)

  However, using the IP address it identified, Spider Labs determined that "Jeff Katzenberg" (Doe) had reviewed use cases for at least a half dozen of Spider Labs's customers on the evening[1] of June 14, 2020.  (Doirado Decl. ¶¶ 16, 19-21.)  After Spider Labs obtained copies of Doe's emails from its customers, it correlated the time stamps on those emails with the time the use cases were reviewed on its website.  (*Id*. ¶ 25.)  In each instance, the emails were sent to the customer mere *minutes* after Doe reviewed the customer information on Spider Labs's website.  (*Id*.)

  Doe's untrue statements continued in the emails themselves.  In the emails, Doe claimed to be "currently running an article about a fraudulent company called Phybbit/SpiderAF."  (*See, e.g.*, Ex. B to Doirado Decl.)  Yet Doe's Declaration confirms he was not running the article at the time he contacted Spider Labs's customers for the simple reason that he had not even *begun* to write the article.  (Doe Decl. ¶ 39.)  Doe also claims to have "hired a team of engineers" to test Spider Labs's platform.  (*See, e.g.,* Ex. B to Doirado Decl.)  Again, in his Declaration, Doe now claims to have done the analysis himself—at some unspecified time.  (Doe Decl. ¶ 25-30.)

---

[1] Spider Labs reasonably believes that Doe was in New York in June 2020 when the emails were sent to its customers. Accordingly, for purposes of discussing the timeline of events, Spider Labs uses New York time.

### D.      Doe Severely Mischaracterizes the Facts Related to MRC.

On June 15, 2020, Spider Labs received an email from an executive at the Media Rating Council ("MRC")[2] in which MRC questioned Spider Labs's March 25, 2020 press release in which Spider Labs stated that it had "earned accreditation" by MRC.  (Doirado Decl. ¶ 27.)  Spider Labs reviewed the press release and confirmed that, as a result of a translation error, the "accreditation" reference only existed in the English version of the press release.  (*Id.* ¶¶ 29-30.)  The original version of the press release, published in Japanese, correctly stated that Spider Labs was "compliant" with MRC guidelines.  (*Id.*)  Upon discovering the error, Spider Labs issued a correction in English, explaining the translation mistake.  (*Id.* ¶ 31.)

Spider Labs later learned that Doe also sent an email to MRC on June 14, 2020 at roughly the same time he sent the emails to Spider Labs's customers.  (*Id.* ¶¶ 32-33.)  In the email, Doe claimed he was working on his "10 first blog posts" and that one related to "false prophets"—companies that falsely claimed accreditation from entities like MRC.  (Ex. F to Doirado Decl.)  Doe also claimed to have contacted "several" Spider Labs clients—including ValueCommerce—and *to have received responses*.  (Ex. F to Doirado Decl.)  However, Doe has admitted he did not even *send* his email to ValueCommerce until *after* he sent his email to MRC.  (Exs. B and F to Doirado Decl.)  Accordingly, Doe intentionally misrepresented his actions to MRC.

### III.    ARGUMENT.

### A.      Doe Fails To Show That He Is Entitled To First Amendment Protections.

In his Motion, Doe boldly declares the thirteen emails he sent to Spider Labs's customers are "anonymous free speech" entitled to protection.  (*See* Mot. 6:6.)  Doe offers parenthetical citations to cases holding that online speech is subject to the First Amendment.  (*Id.* 6:5-20.)  Doe's emphasis that online speech should be treated as other types of speech is a red herring.

The speech at issue is not a published article, blog, or online post.  Rather, the speech in question are thirteen private communications sent by Doe to Spider Labs's customers.  Doe never

---

[2] MRC had originally emailed Spider Labs on June 10, 2020 but Spider Labs did not receive that email as it was in the process of moving offices.

released the contents of those emails publicly.  In fact, the only reason Spider Labs learned of their existence is because they were contacted by the customers that Doe solicited.  Doe does not cite to any law that supports a finding that private communications—unlike public online posts or commentary—are subject to First Amendment protections.  Doe's presumption that his emails constitute protected free speech is particularly baseless given that the emails did not facilitate "rich, diverse, and far ranging exchange of ideas" or "open communication and robust debate."  *Doe v. 2TheMart.com Inc.*, 140 F.Supp.2d 1088, 1092 (W.D. Wash. 2001).

Even assuming *arguendo* that Doe's private, non-published emails were the type of speech subject to First Amendment protection, Doe fails to support adequately his demand for anonymity. According to Doe, anonymity allowed him to "protect his privacy, safety, and professional reputation…"  (Mot. 6:24-25.)  However, such protections would only matter if *Doe actually published something*.  He does not offer this Court any reason to believe that anonymity was essential to protect him from "intimidation" or "harassment" by the recipients of his emails.  At most, Doe can argue that he required anonymity to promote his objectivity—but the benefit to Doe of artificially enhancing his credibility does not implicate First Amendment considerations.

Doe has failed to offer this Court any reason to conclude that his private emails to Spider Labs's customers are subject to First Amendment protections, his sole basis for seeking to quash the subpoenas.  Therefore, the Motion should be denied as a matter of law.

**B.      Even If Doe's Communications Are Protected By The First Amendment, Spider Labs Is Not Required To Meet The Summary Judgment Standard.**

In *In re Anonymous Online*, the Ninth Circuit considered a writ of mandamus challenging an order by the Nevada District Court requiring the disclosure of the identities of three anonymous online posters.  661 F.3d at 1171.  In denying the writ of mandamus—and thereby upholding the requirement that the anonymous online speakers be identified—the Ninth Circuit made several important rulings that Doe entirely ignores.

First, the Ninth Circuit specifically noted that the "right to speak, whether anonymously or otherwise, is not unlimited…and the degree of scrutiny varies depending on the circumstances and the type of speech at issue."  *In re Anonymous*, 661 F.3d at 1173.  Further, the Ninth Circuit

recognized that commercial speech, unlike political speech, enjoys only a "limited measure of protection, commensurate with its subordinate position on the scale of First Amendment values," and such protection only applies as long as the "communications is neither misleading nor related to unlawful activity." (*Id.*) Thus, under the Ninth Circuit's holding, the circumstances surrounding Doe's conduct, as well as whether the communications were commercial in nature, are relevant to any First Amendment analysis.

In this instance, Doe effectively admits that he individually and his employer are active in the Ad Fraud space—the same industry in which Spider Labs competes.  Under these circumstances, there is at least a question of fact—and one that cannot be resolved without discovery—as to whether Doe's communications are commercial speech.  As such, the Motion to Quash should be denied and Spider Labs should be allowed to take discovery related to Doe's identity.  Such discovery will not rob Doe of his opportunity to raise his First Amendment defense, but it will ensure his defense is considered on its merits and in light of all relevant facts.

Second, the Ninth Circuit surveyed decisions from across the country employing a range of legal standards for requiring disclosure of an anonymous speaker's identity.  (*Id.* at 1175-76.) These standards varied from a "motion to dismiss" standard, requiring a showing of good faith by the subpoenaing party; to another requiring a *prima facie* showing of the elements of the underlying claims; to the most difficult, requiring that the subpoenaing party demonstrate it could obtain summary judgment on its claims.  (*Id.*)

Despite the Ninth Circuit's clear separation of the various standards, Doe attempts to conflate the *prima facie* and *Cahill* "summary judgment" standards.  (Mot. 7:12-28; 8:1-4.)  The Ninth Circuit expressly noted that the *Cahill* "summary judgment" standard is *different* than the "*prima facie*" standard.  *In re Anonymous Online*, 661 F.3d at 1175.  Worse, Doe blatantly mischaracterizes the decision in that case.  (*Id.*)  While Doe is correct that this Court adopted the *Cahill* standard in an unreported decision from 2006, the Ninth Circuit did not in 2011.  *Cf. Best Western Int'l, Inc. v. Doe*, No. CV–06–1537–PHX–DGC, 2006 WL 2091695, at *4 (D. Ariz. July 25, 2006); *In re Anonymous*, 661 F.3d at 1177.  Rather, the Ninth Circuit held that the Nevada District Court should not have applied the *Cahill* standard because the speech at issue was not

6

political.  *In re Anonymous Online*, 661 F.3d at 1177.  Courts concluding that the *prima facie* standard has been met then balance the competing interests of the parties.  *See, e.g.*, *USA Technologies v. Doe,* 713 F.Supp.2d 901, 907 (N.D. Cal. 2010).

### C.   Applying The Proper Standard, The Motion To Quash Should Be Denied.

Applying the proper standard, the Motion to Quash should be denied because Spider Labs can demonstrate and cite to competent evidence supporting the *prima facie* elements of each of its claims.  Not only will it demonstrate that here, but the Southern District of New York has *already* held that Spider Labs established each of the elements.  (New York Order 2.)

#### 1.   Spider Labs Can Establish Each of the Elements For Defamation.

##### a.   The elements for a claim of defamation are present.

In order to evaluate whether Spider Labs can make a *prima facie* case for defamation, it is necessary first to determine the elements of the claim and the level of showing that is required at this stage of the proceedings (*i.e.* at the pleading stage).  To succeed on a claim for defamation, a plaintiff must establish "'(1) a false statement about the plaintiff; (2) published to a third party without authorization or privilege; (3) through fault amounting to at least negligence on [the] part of the publisher; (4) that either constitutes defamation per se or caused 'special damages'."  *Thai v. Cayre Group, Ltd.*, 726 F.Supp.2d 323, 329 (S.D.N.Y. 2010).

On the face of the Complaint, Spider Labs alleged (1) Doe published one or more false and derogatory statements about Spider Labs (2) to Spider Labs's customers (3) intentionally, or with negligent disregard for the statements' falsity (4) that constituted defamation per se and caused general and special damages to Spider Labs.  (Compl. ¶¶ 15-17, 31-35.)

Moreover, Spider Labs can point to competent evidence outside the pleading supporting each element.  First, Spider Labs has in its possession many of the emails that Doe admits (Doe Decl. ¶ 32) that he sent to Spider Labs's customers on June 15, 2020.  (*See, e.g.* Exs. A–E to Doirado Decl.)  Those emails contain numerous false statements, including that (1) Doe was running an article about Spider Labs and its product, SpiderAF, on his blog; (2) Spider Labs's

technology is not based on artificial intelligence; (3) Spider Labs is defrauding its clients; (4) Spider Labs's clients are not protected from fraud; (5) he had hired a team of engineers to test Spider Labs's technology; (5) there is nothing behind Spider Labs's platform; and (6) Spider Labs's platform cannot detect fraud. (*Id.*) Notably, Doe does *not* address the foregoing portions of his emails in the Motion or the Motion, instead choosing repeatedly to characterize the emails or to quote snippets focused on the press release related to MRC. Doe's reason for doing this is obvious—the emails, viewed in their entirety, are competent evidence of Spider Lab's defamation claims. Doe does not allege that Spider Labs authorized him to send the emails. Thus, Spider Labs has more than sufficient competent evidence to meet the first two elements of a *prima facie* case for defamation under New York law.

In terms of the third element—fault amounting to at least negligence—Doe freely admits he made no effort to contact Spider Labs prior to sending his unsolicited emails to Spider Labs's customers. (*See* Doe Decl. ¶¶ 31-32.) Further, he did not license Spider Labs's technology for evaluation purposes or discuss with any of Spider Labs's customers the type of functionality that they had licensed from Spider Labs, how it was supposed to work, or what it was supposed to do. Doe claims to have done testing but does not claim to have followed any established methodology to ensure the validity or accuracy of his testing methods. (Doe Decl. ¶¶ 22-26.) In the *only* other "investigation" that Doe claims he conducted during 2020—related to two websites that published reviews—the *first* thing Doe claims to have done is contact the websites and brought the issue to their attention (Doe Decl. ¶ 11)—something that indisputably did not occur here. Thus, Doe's own admissions confirm that competent evidence exists to support a *prima facie* finding that Doe acted at least negligently when publishing the emails in question.

As for the final element, under New York law, generally "a statement that 'tend[s] to injure the plaintiff in his or her trade, business or profession' is defamatory per se and does not require proof of special damages to be actionable," and "'[w]here a statement impugns the basic integrity or creditworthiness of a business, an action for defamation lies and injury is conclusively

8

presumed'." *Thai*, 726 F.Supp.2d at 331 (citations omitted).  Doe's statements relate directly to Spider Labs's business, its products, and its integrity.  As such, the final element is present. Therefore, Spider Labs has established a *prima facie* claim for defamation.[3]

> b.     **None of Doe's affirmative defenses save the Motion.**

In a strategic effort to overcome Spider Labs's competent evidence, Doe boldly states that in "evaluating the viability of a plaintiff's claims, the Court should consider any and all affirmative defenses presented by the defendant."  (Mot. 7:26-27.)  Put bluntly, the single case that Doe relies on for this proposition does *not* support Doe's argument.  In *Art of Living Foundation v. Does 1-10*, Case No.: 10-CV-05022-LHK (N.D. Cal. Nov. 9, 2011), this Court stated in a footnote that a reviewing court *might* consider fair use arguments raised in a motion to quash even where the applicable standard requires only a *prima facie* showing of the plaintiff's claim because the *fair use doctrine* enshrines an important First Amendment Protection.  No. 10–CV–05022, 2011 WL 5444622 at *8, n. 6 (N.D. Calif. 2011) (emphasis added).  Doe does not claim that any of his affirmative defenses "enshrine an important First Amendment protection," and thus there is no legal support for Doe's claim that this Court need consider his affirmative defenses in determining whether Spider Labs has made a *prima facie* showing of its defamation claim.  Notwithstanding the absence of any supporting law, considering Doe's affirmative defenses does not change the determination that Spider Labs has met its *prima facie* burden.

---

[3] Spider Labs is not required, as Doe implies, to meet the heightened pleading standard required by New York statute for defamation claims.  The very cases cited by Doe clearly state as such.  *See, e.g.*, *Gristede's Foods v. Poospatuck (Unkechauge) Nation*, No. 06–cv–1260, 2009 WL 4547792 at *9 (Dec. 1, 2009) ("the federal rules do not require the particularized pleading requirements set forth in New York's C.P.L.R. section 3016").  Rather, federal courts, even in New York, apply the pleading standard of Federal Rule of Civil Procedure 8, that "each pleading be specific enough to 'afford defendant sufficient notice of the communications complained of to enable him to defend himself'." (*Id.*) (internal citations omitted).  For defamation claims in particular, the Southern District of New York requires that plaintiffs identify the allegedly defamatory communication, who made it, to whom, and when.  *Thai*, 726 F.Supp.2d at 329.  Doe's argument that Spider Labs's allegations lack the required particularity does not change the conclusion that Spider Labs has met the burden of establishing a *prima facie* claim for defamation.  Spider Labs alleged in the Complaint that one or more false statements of fact about Spider Labs were communicated in emails, sent by Doe, to multiple Spider Labs customers, on June 15, 2020.  Compl. ¶¶ 23, 31.  Spider Labs even summarized what assertions in the emails were defamatory.  Compl. ¶ 15.  Thus, Spider Labs has pled with sufficient particularity.

### **(1)** **Doe's emails were not opinion statements for purposes of a defamation analysis.**

Doe argues that Spider Labs's defamation claim is not viable because the statements put forth in his emails were "pure opinion," not statements of fact. (Mot. 9:18.) Whether a statement is opinion or fact for defamation purposes depends on several factors, including (1) whether its meaning is unambiguous; (2) whether it can be proven true or false; (3) its context; and (4) its "broader social context." *Grayson v. Ressler & Ressler*, 271 F.Supp.3d 501, 516 (S.D.N.Y. 2017) (finding three of four statements alleged by plaintiff were actionable defamation). However, when a statement makes criminal accusations or "'derogation[s] of professional integrity in terms subject to factual verification, [however,] the borderline between fact and opinion has been crossed'." (*Id.*) (citations omitted). Opinion implying facts unknown to the recipient is actionable defamation, but opinion citing facts upon which it relies is not. (*Id.*)

Various assertions Doe makes in his emails that Spider Labs maintains are false—about Spider's use of artificial intelligence, that SpiderAF cannot detect fraud, that there is nothing behind Spider Labs's technology—are capable of being proven true or false. Further, Doe continually implies that he is relying on facts unknown to the reader to form his opinion. (*See, e.g.*, Exs. A–B to Doirado Decl. ("In my article, I talk about … how they claim their technology is artificial intelligence based (which it isn't.").) At a minimum, Spider Labs is entitled to know Doe's identity in order to test the validity of the argument that the statements were truly opinion. As discovery is critical to Doe's affirmative defense, the Motion to Quash must be denied so that both Parties can engage in substantive discovery.

The cases Doe relies on do not salvage his arguments. Doe points to cases finding that statements calling a plaintiff a "fraud" and a "liar" or the plaintiff's conduct "extortion, manipulation, fraud, and deceit" were not actionable as defamation because the context and speculative nature of the statements "signal[] the reader that what is said is opinion, not fact" or could not be proven false. (Mot. 10:2-7.) (*citing Sabratek Corp. v. Keyser & Roberts, No. 99 CIV. 8589(HB), 2000 WL 423529, at \*6 (S.D.N.Y. Apr. 19, 2000)*; *Small Bus. Bodyguard Inc. v. House of Moxie, Inc.*, 230 F.Supp.3d 290, 312 (S.D.N.Y. 2017).) However, Doe does not offer this Court

any persuasive reason to conclude that he signaled to the recipients of his emails that his statements were opinions.  To the contrary, Doe in his emails cites to his own efforts and the efforts of his "team of engineers" to validate his statements that Spider Labs's "clients aren't actually protected from fraud," that Spider Labs is "defrauding" its clients, and that "there's nothing behind [Spider Labs's] platform."  (Exs. A–E to Doirado Decl.)  Thus, Doe goes out of his way to make his statements appear as *fact* not opinion.[4]

In contrast to an opinion column in a newspaper, Doe's email creates an expectation in the reader that he intends the blog article to be an informative exposé on Spider Labs's inadequacies. *Contra Egiazaryan v. Zalmayev*, 880 F.Supp.2d 494, 507 (S.D.N.Y. 2012).  Furthermore, by masking his identity—as Doe admits he did—Doe hid any indicators he might have a conflict of interest skewing his viewpoint.  (Exs. A-E to Doirado Decl.; Doe Decl. ¶ 9.)

### (2)   Additional discovery is necessary for the Court to ascertain the truth or falsity of Doe's statements.

After touting that his statements were "pure opinion," Doe paradoxically argues that his statements were "substantially true" and therefore not actionable.  (Mot. 11:17.)  As an initial matter, Doe's argument is entirely factual.  Among other things, Doe touts his "independent investigation" and "numerous tests" of Spider Labs's technology.  (Mot. 12:5-6.)  Thus, Doe repeatedly injects factual conclusions into his assertions—conclusions that Spider Labs conveniently cannot challenge because *Doe is seeking to prevent Spider Labs from taking discovery*.  Doe cannot rely on questions of fact as a basis to support his Motion to Quash.

Notwithstanding the foregoing, if the Court is inclined to consider Doe's "substantial truth" defense, Doe fails to adduce sufficient evidence.  The adequacy of Doe's investigative efforts is not at issue—it is the truthfulness of his statements.  Not only does Spider Labs vehemently deny

---

[4] Doe goes even further and attempts to argue that his opinions were also not actionable because they were made in good faith and supported by facts. (Mot. 11:10-11.) Not only does Doe's argument go to the merits of his defense— and is therefore not relevant at this stage—it emphasizes the importance of discovery to Doe's defenses. Given that Doe's defenses are fact-heavy, they actually support a denial of the Motion to Quash so that discovery can occur.

the truthfulness of the statements it asserts are defamatory[5], Spider Labs has no way to test *any* of the facts upon which Doe bases his "substantial truth" defense.  Furthermore, holding up one statement in an email as substantially true does not cleanse the others of their defamatory nature.  Finally, Doe cites no law holding that a "reasonable and good faith belief" is equivalent to substantial truth, so his argument as to his "belief" is irrelevant.  (Mot. 12:7-8.)

### (3)   Spider Labs is not a public figure, and evidence exists to support a finding of actual malice.

Contrary to Doe's assertion, Spider Labs is not a limited-purpose public figure.  The Supreme Court has held that, in defamation actions, "otherwise private individuals [may be] considered public figures 'for a limited range of issues.'"  *Biro v. Conde Nast*, 963 F.Supp.2d 255, 270 (S.D.N.Y. 2013) (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 335-36 (1974)).  Under a four-part test adopted by the Second Circuit for determining whether this defense applies to a particular plaintiff, a defendant must establish that a plaintiff has:

> (1) successfully invited public attention to his views in an effort to influence others prior to the incident that is the subject of litigation; (2) voluntarily injected himself into a public controversy related to the subject of the litigation; (3) assumed a position of prominence in the public controversy; and (4) maintained regular and continuing access to the media.

*Enigma Software Grp. USA v. Bleeping Computer LLC*, 194 F.Supp.3d 263, 288 (S.D.N.Y. 2016) (quoting *Lerman v. Flynt Distrib. Co.*, 745 F.2d 123, 136-37 (2d Cir. 1984); *accord Biro*, 963 F.Supp.2d at 270.  A "public controversy" is any topic of which "'sizeable segments of society have different, strongly held views'."  *Biro*, 963 F.Supp.2d at 273 (quoting *Lerman*, 745 F.2d at 138).  It must have been controversial at the time the plaintiff entered the fray.  (*Id.*)

In *Enigma Software*, the Court found that the defendant had not sufficiently identified a public controversy where it asserted that  "[t]he public controversy at issue here is Plaintiff's deceptive business practices, the danger its software poses, and Plaintiff's harassment of those who

---

[5] Spider Labs has not alleged that the statement regarding its MRC accreditation, which Doe continuously points to, was defamatory.  (Compl. ¶ 15.)  Spider Labs has conceded that the English translation of its press release was incorrect and took steps to correct it in the public sphere before filing this lawsuit.  (Doirado Decl. ¶¶ 29-31.)

criticize it" but failed to provide evidence that "'sizeable segments of society" had strong views about any one of them.   194 F.Supp.3d at 289 (quoting *Lerman*, 745 F.2d at 138).   The Court further found that the defendant failed to allege any facts suggesting a public position taken by the plaintiff on the "integrity of its business practices or the quality of its products," and that the plaintiff's "sales and recognition" and alleged litigiousness did not show it had injected itself into a controversy, either.   (*Id.*)

At the outset, this stage of the litigation is much too early for the Court to adjudicate whether Spider Labs is a public figure for a limited purpose.   In *Biro*, the Court noted that it is permissible, but not required, for a court to determine whether a plaintiff is a public figure in considering a motion to dismiss, *if* the determination can be made based on the pleadings alone. 963 F.Supp.2d at 270.   Doe has not presented sufficient evidence for the Court to make that determination at this stage.   Doe continues to point to a press release issued by Spider Labs which it later acknowledged contained a translation error.   (Doirado Decl. ¶¶ 29-31.)   Doe cannot cherry-pick one assertion from an email that was riddled with claims about Spider Labs and its technology, particularly when that assertion is not one that Spider Labs has alleged as defamatory.   Doe does not present any evidence supporting the factors of the four-part test as relate to the numerous defamatory statements in his emails.   (Mot. 13:2-6.)

Even assuming *arguendo* that Spider Labs invited public attention by publishing the press release at all, Doe has presented insufficient evidence to support a finding that a public controversy existed at the time of publication.   (*Id.*)   In fact, Doe presents no evidence that a public controversy about Spider Labs exists at all, other than the one drummed up by him.   Doe's argument that Spider Labs "regularly issues press releases, operates its own blog, presents at industry events, and seeks attention for [its] products" is similar to the defendant's argument in *Enigma Software* that the plaintiff's general success constituted injecting itself into a public controversy.   (Mot. 13:5-6.)   In sum, Doe has failed to establish this affirmative defense.[6]

---

[6] Even were the Court to accept Doe's argument at this stage that Spider Labs is a limited-purpose public figure, Spider Labs has presented *prima facie* evidence of actual malice on Doe's part.   Actual malice requires a showing of intention or at least recklessness.   *Biro*, 963 F.Supp.2d at 276.   First, Spider Labs pled in its Complaint that "Doe intentionally, or with negligent disregard for their falsity and without privilege or authorization, published false and defamatory

### (4)   Doe's Statements are not matters of public concern, but there is evidence supporting gross irresponsibility.

"[A] private-figure plaintiff is involved in a matter of public concern if the speech at issue 'is related to a 'matter of political, social, or other concern to the community or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public'." *Blair v. Inside Ed. Prods.*, 7 F.Supp.3d 348, 357 (S.D.N.Y. 2014). Where a statement is found to relate to a matter of public concern, the plaintiff must show that the defendants "'acted in a grossly irresponsible manner without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties.'" *Bloom v. Fox News of Los Angeles*, 528 F.Supp.2d 69, 75-76 (E.D.N.Y. 2007).

Here, the specific topics Doe references in his emails—the quality of Spider Labs's product and its professional integrity—are not matters of "general interest," and Doe presents no evidence as such. This Court need not determine whether Ad Fraud on the Internet is a subject of general interest as Doe's defamatory statements did not address Ad Fraud.

Even if the Court were to find that Doe's emails relate to a matter of public concern, Doe has irresponsibly shared his allegations with Spider Labs's customers without conducting a valid test of Spider's products, citing reliable sources, giving Spider Labs an opportunity to comment, or verifying the validity of his statements. (Exs. A–F to Doirado Decl.) Accordingly, Doe has not sufficiently established this defense to overcome Spider Labs's *prima facie* claim for defamation.

### 2.   Sufficient Evidence Exists to Support Claims of Tortious Interference With Contractual Relationships and Prospective Business Advantage.

Rather than examine the elements required to make out claims for tortious business interference, Doe characterizes Spider Labs's claims as a mere re-hash of its defamation claim and rests on his defamation arguments. (Mot. 15:16-22.) Doe's arguments are not well taken.

---

statements concerning Spider Labs to multiple Spider Labs' (*sic*) customers." (Compl. ¶ 32.) Second, in Doe's emails, he expressly stated his goal was "to expose" Spider Labs, adding at least once: "I really think you should find a different vendor!". (*See, e.g.*, Ex. B to Doirado Decl.) Third, it is undisputed that the *only* company Doe identified and pursued for his blog and whose clients he contacted was Spider Labs. Finally, Spider Labs's investigation showed Doe contacted its customers mere minutes after reviewing customer use information on Spider's website. (Doirado Decl. ¶ 25.) The foregoing supports a *prima facie* finding that Doe *targeted* Spider Labs and, in his haste to attack Spider Labs, showed reckless disregard for the truth or falsity of his assertions.

Under New York law, to prevail on claims for both tortious interference with a contractual relationship and tortious interference with a prospective business advantage, a plaintiff must show "(1) a business relationship between Plaintiffs and a third party (2) that the Defendants knew of and intentionally interfered with (3) solely out of malice or through the use of dishonest, unfair, or improper means (4) thereby injuring Plaintiffs." *O.E.M. Glass Network, Inc. v. Mygrant Glass Co.*, 436 F.Supp.3d 576, 594 (E.D.N.Y. 2020). "[T]he conduct must be 'directed not at the plaintiff itself, but at the party with which the plaintiff has or seeks to have a relationship.'" *Puebla Palomo v. DeMaio*, 403 F.Supp.3d 42, 64 (N.D.N.Y. 2019).

Here, Spider Labs has established it had preexisting relationships with the customers emailed by Doe.  (Doirado Decl. ¶¶ 21, 23.)  By emailing those customers, explicitly telling at least one of them to "find a different vendor," and sowing doubt about Spider Labs's integrity and the efficacy of its technology, Doe intentionally interfered with those relationships.  (Exs. A-E to Doirado Decl.)  Doe's conduct constituted the independent tort of defamation.  Doe has harmed Spider Lab's credibility with those customers he contacted and whom Spider Labs had to contact in the process of investigating Doe's actions.  Finally, Doe's actions were directed at the customers, third parties with whom plaintiff has and hopes to continue to have business relationships.  Therefore, Spider Labs has viable *prima facie* claims for tortious interference with contractual relationships and prospective business advantage.

The sole reason Doe offers this Court to lump Spider Labs's interference claims in with its defamation claim is that he alleges, without support, that the interference claims are based on the injury to its reputation.  (Mot. 15:22.)  Doe conveniently ignores that he attacked the *efficacy* of Spider Lab's technology, and in particular its technical performance.  Further, Doe *targeted* Spider Labs and its customers, attempting to convince them to cease working with Spider Labs.  While Doe's statements certainly defamed Spider Labs, that is not the limit of its claims.

3.     **Spider Labs Has a Viable Claim for Injunctive Relief.**

In federal court, plaintiffs seeking a permanent injunction must show "(1) a likelihood of irreparable harm; (2) either a likelihood of success on the merits or sufficiently serious questions

as to the merits plus a balance of hardships that tips decidedly in their favor; (3) that the balance of hardships tips in their favor regardless of the likelihood of success; and (4) that an injunction is in the public interest." *General Mills, Inc. v. Chobani, LLC*, 158 F.Supp.3d 106, 115 (N.D.N.Y. 2016). The Court held that General Mills had sufficiently demonstrated a likelihood of success on its false advertising claim and that irreparable harm was likely to occur without an injunction. (*Id.* at 119-21.) The Court held that Chobani, on the other hand, did not have a legitimate interest in "perpetuating false claims … that specifically single out a competitor's product" and that the public has an interest in "preventing false or misleading advertising." (*Id.* at 121.) The Second Circuit has found the irreparable harm element is also met when "a loss is difficult to replace or difficult to measure." *Salinger v. Colting*, 607 F.3d 68, 81 (2d Cir. 2010).

Spider Labs has demonstrated evidence supporting each of the elements for injunctive relief. Primarily, monetary damages will not repair the harm already caused to Spider Labs's reputation and business relationships, and they will not prevent the same harm from occurring again. At this stage, the Court has only Doe's word to go on that he "has 'decided not to launch [his] Blog." (Mot. 16:28.) All other evidence—the fact that Doe's emails explicitly discuss an article he plans to publish, his purchase of the domain name www.fightclickfraud.com, and the fact that he continues to hide his identity—indicate that he plans to continue to anonymously communicate false and defamatory statements about Spider Labs. (Exs. A-E to Doirado Decl.; Doe Decl. ¶¶ 6-7, 9.) Spider Labs's damages are also difficult to measure at this stage, and it has demonstrated a likelihood of success on the merits. Doe has not demonstrated a hardship to himself that would outweigh that incurred by Spider Labs, particularly if it is in fact true that Doe, like Chobani was to General Mills, is a competitor of Spider Labs. Finally, the public has an interest in enjoining defamation and improper business interference. Therefore, Spider Labs has established a *prima facie* basis for seeking permanent injunctive relief against Doe.

### 4.    The Balance of the Hardships Strongly Favor Spider Labs.

In his final argument for quashing the Subpoenas, Doe's self-serving characterization of the hardship each Party faces underscores why the Motion to Quash must be denied. (Mot. 17:9-

11.)  First, the undisputed facts show that Doe did not "speak out against Spider Labs" nor did he speak "openly" or publicly.  Second, Doe's pretext for his emails—that he is an amateur blogger who *intended* to publish a blog—does not support Doe's position because he not only did not publish his article about Spider Labs, he never published any article about anything or anyone. Doe has never used his voice and therefore cannot claim to be silenced.  Moreover, Doe does not establish any reason why the loss of his anonymity would harm him.  He claims to require anonymity so that he can maintain the perception of objectivity—a self-serving but irrelevant goal. Doe fails to establish any harm that he will suffer if he loses his anonymity.

In contrast, through the Motion to Quash, Doe is asking this Court to deprive Spider Labs of the opportunity to have its day in court.  Unlike Doe, who will still have the opportunity to defend himself if the Motion to Quash is denied, Spider Labs will not be able to proceed with this lawsuit if it cannot determine Doe's identity.  In essence, Doe is asking this Court to allow him to target Spider Labs without fear of being held accountable for his actions.  While every party that has engaged in defamation would certainly want the same outcome, forcing Doe to defend his actions is not a hardship.  Depriving Spider Labs of *any* recourse at this initial stage based on Doe's invocation of the First Amendment—notwithstanding his undisputed failure to engage in any public speech and notwithstanding his tacit admission to working in a prominent capacity in Spider Lab's industry—would be a hardship to Spider Labs, and is the *precise* outcome the Ninth Circuit sought to avoid in upholding the district court's decision to require disclosure of identities in *In re Anonymous Online*, 661 F.3d at 1177.

**D.      Doe Should Not Be Awarded His Attorney Fees.**

Under Arizona law, attorney fees are not recoverable in an action unless provide for by statute or by an agreement between the parties.  *See, e.g.*, *Wichansky v. Zowine*, 150 F.Supp.3d 1055, 1065 (D. Ariz. 2015).  Here, Doe points to no statute, contract, or Arizona precedent supporting his demand for fees.  (Mot. 17:20-26.)  As such, his request for fees must be denied.

**IV.      CONCLUSION.**

For the foregoing reasons, Doe's Motion to Quash must be denied.

Dated:  September ___, 2020.

KUTAK ROCK LLP

By: /s/ Chad T. Nitta
     Chad T. Nitta (*appearance pro hac vice*)
     Jill E. Beathard (*appearance pro hac vice*)

     *ATTORNEYS FOR PLAINTIFF*
     *Spider Labs, Ltd.*

SPIDER LABS, LTD.'S RESPONSE IN OPPOSITION TO JOHN DOE'S MOTION TO QUASH SUBPOENA TO GODADDY.COM, LLC
Case No. 2:20-MC-00039-SPL

4817-1225-3898.5

**CERTIFICATE OF SERVICE**

I hereby certify that on this ___ day of September, 2020, I electronically filed the foregoing **SPIDER LABS, LTD.'S RESPONSE IN OPPOSITION TO JOHN DOE'S MOTION TO QUASH SUBPOENA TO GODADDY.COM, LLC** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

John H. Gray
Kristine J. Beaudoin
PERKINS COIE LLP
2901 North Central Avenue, Suite 2000
Phoenix, AZ 85012-2788
Tel: (602) 351-8000
JHGray@perkinscoie.com
KBeaudoin@perkinscoie.com
DocketPHX@perkinscoie.com
*Attorneys for John Doe*

Mitchell A. Karlan (*appearance pro hac vice*)
Avi Weitzman (*appearance pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel: (212) 351-4000
mkarlan@gibsondunn.com
aweitzman@gibsondunn.com
*Attorneys for John Doe*

KUTAK ROCK LLP

By: __s/ Chad T. Nitta_____
Chad T. Nitta (*appearance pro hac vice*)
Jill E. Beathard (*appearance pro hac vice*)